UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-cr-197 (ECT)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LUCAS MATHEW KRAMER,

    Defendant.

**GOVERNMENT'S SENTENCING POSITION**

Lucas Mathew Kramer—a longtime collegiate climbing coach—knowingly collected at least 600 images of child pornography that included the graphic sexual exploitation and penetration of prepubescent children. Kramer carefully cultivated his collection, distributed it to others on the Internet, and went out of his way to maintain connections with like-minded individuals. Kramer also directly engaged in numerous sexually charged chats with children. These actions victimized *real* children. The United States respectfully recommends that the Court impose a sentence of 97-months' imprisonment, a 7-year term of supervised release, and order $10,000 in mandatory restitution to Kramer's known victims. Finally, given Kramer's financial position, the government requests that the Court impose a $10,000 assessment pursuant to the Amy, Vicky, and Andy Child Pornography Victim Assistance Act (AVAA) and a $5,000 assessment to the Justice for Victims of Trafficking Act (JVTA).

## **Kramer's Criminal Conduct**

On September 23, 2022, the Bureau of Criminal Apprehension submitted a Cybertip that an online individual with the username "northernboy35" had used the Kik messenger application to upload 19 videos of child pornography to the Internet. Less than a week later, a second Cybertip indicated that the same username had uploaded 5 additional child pornography videos to the Internet. Both tips aligned with a similar one received from the Wisconsin Department of Criminal Investigation. Based on these three tips, law enforcement officers quickly determined that the uploaded files originated from a location near Duluth, Minnesota. Subsequent investigative efforts linked the e-mail and IP addresses for the "nothernboy35" moniker directly to Lucas Mathew Kramer.

On December 14, 2023, law enforcement executed a search warrant at Kramer's residence and seized numerous electronic devices. Kramer flatly denied viewing or possessing any child pornography. The subsequent forensic review of Kramer's devices, however, established otherwise. Kramer had stored over 600 images or videos of child pornography spread across three different Samsung Galaxy devices. His collection of child pornography included the graphic sexual abuse of prepubescent children—some as young as toddlers—and included videos depicting children being physically forced into sexual compliance. The devices also confirmed that Kramer had uploaded some of these images and videos to the Internet for broader dissemination. This aligned with the fact that Kramer had become an active member in various online communities that treated child pornography as a

commodity, in which members sought harder-to-find content and sought to enhance their reputation through the shocking nature of their collections.

Unfortunately, Kramer did not limit his conduct to passively collecting and distributing this content. His devices included numerous sexually explicit chats with self-identified prepubescent minors. This fact did not dissuade Kramer from engaging in graphic sexual discussions that appeared tailored to his own sexual gratification. On at least one occasion, Kramer even described his own purported hands-on molestation of a child. Kramer also encouraged minors to take and send him nude images of themselves. These actions stand in stark contrast to Kramer's repeated insistence that he engaged in this conduct for innocuous reasons.

On July 16, 2024, a grand jury returned an indictment charging Kramer with possession of child pornography. ECF No. 1. To his credit, Kramer orientated quickly to the nature of these charges. On October 11, 2024, Kramer entered his guilty plea. Importantly—especially to the extent the Court considers financial assessments—Kramer's pretrial conditions permitted him to continue working during the pendency of the case and while awaiting sentencing. *See* ECF No. 9; PSR ¶¶ 60-61.

## **The Presentence Report**

The government agrees with the facts and conclusions of the PSR, which resulted in an applicable Guidelines range of 97-121 months based on a total offense level of 30 and a criminal history category of I. (PSR ¶ 69.) The parties do not have any outstanding issues or objections to the PSR.

## **The Appropriate Sentence**

Kramer's minimization and rationalization of his behavior is troubling. It does not appear that Kramer has meaningfully grappled with his own offense conduct or correctly calibrated to the harm he caused. A significant custodial sentence is necessary to account for these harms. But the imposed sentence must also account for the fact that Kramer did not produce child pornography, immediately accepted responsibility for his actions, and has taken initial steps to understand his predilections in hopes of mitigating his likelihood of reoffending. The government respectfully recommends that a sentence of 97-months' imprisonment, a 7-year term of supervised release, and mandatory restitution along with moderated financial assessments will achieve the broad goals of 18 U.S.C. § 3553(a).

1. Nature & Circumstances of Offense

The horrific nature of child pornography is unfortunately well documented. Those trafficking in images exploiting children exist in a community necessarily shrouded in secrecy. This community scrupulously protects its content and uses coded language to classify and categorize different forms of sexual abuse. This context is important, as it exemplifies the efforts Kramer expended to gain access to this material. Kramer cleared every hurdle to enter these communities, amass his own collection of content, and remain a trusted purveyor. In this way, at its most basic level, the way Kramer curated his collection can be boiled down to essentially trading commodities. PSR ¶ 16. It is alarming, however, that Kramer does not seem to grasp how dehumanizing such a characterization is to his victims.

4

Kramer also did much more than curate a private collection. Most of Kramer's content proved to be particularly disturbing, as many of the images and videos focused on the sexual penetration of prepubescent children. This content seemed to delight in the taboo aspects of age discrepancy, such as a video of a young girl wearing a pink Winnie-the-Pooh shirt while she endured hands-on sexual abuse. Kramer ensured this type of content could circulate far and wide by distributing it to others. Finally, and perhaps most aggravating—given his attempts to distance himself from the conduct—is the fact that Kramer had started to directly engage with potential victims. His online conversations with children as young as 10 proved to be sexually explicit, focused on arousal, and ultimately encouraged those children to create content for him. It is impossible to comprehend how Kramer's sexualized chats with minors will prospectively affect those individuals.

To be clear, Kramer abused every child he watched, traded, and contacted. The PSR specifically details how Kramer's abuse affected one of his known victims. (PSR ¶ 14.) Survivors of child abuse and exploitation report higher rates of PTSD, suicide, anxiety, depression, eating disorders, and other disorders.[1] Sadly, these children rarely recover completely from the trauma of sexual abuse. A. Perry and D. DiLillo,

---

[1] *See, e.g.*, Molnar, B. E., Berkman, L. F., & Buka, S. L., *Psychopathology, childhood sexual abuse and other childhood adversities: Relative links to subsequent suicidal behaviour in the US*, Psychol. Med., 31, 965–77 (2001); Paolucci, E. O., Genuis, M. L., & Violato, C., *A meta-analysis of the published research on the effects of child sexual abuse*, J. of Psychol., 135(1), 17–36 (2001); Putnam, F. W., *Ten-year research update review: Child sexual abuse*, J. Am. Acad. of Child and Adolescent Psych., 42(3) (2003).

5

*Child Sexual Abuse*, 147, in NA. Jackson, Encyclopedia of Domestic Violence, (2007). The offense at hand is grave, it is extensive, and it requires serious punishment.

It is appropriate for the Court to consider the full range of Kramer's conduct when it fashions the appropriate sentence. *See United States v. Anderson*, 926 F.3d 954, 958 (8th Cir. 2019) (explaining that uncharged conduct can be relevant to fashioning an appropriate sentence); *see also United States v. Mack*, 452 F.3d 744, 745-46 (8th Cir. 2006) (holding that, in sentencing defendant for sexual abuse of a minor, the sentencing court could consider the defendant's possession of child pornography even if the possession conduct was dismissed or uncharged). The Court should be leery of Kramer's likely efforts to minimize his offense conduct by selectively focusing on isolated aspects of his actions.

2. History & Characteristics of the Defendant

Kramer's unique history and characteristics do not meaningfully contextualize his actions. He benefited from a remarkably stable upbringing that was free of poverty, violence, or drug abuse. Kramer is well-educated, participated in several extra-curricular activities during his youth, and successfully pursued higher education. Kramer parlayed this background into a lengthy history of gainful employment, which included an extensive career as a collegiate climbing coach. It also appears that Kramer continues to benefit from the broad support of friends and family. Although Kramer references a history of "minimizing his own frustrations or emotions for years in order to help others" and that he "used pornography to cope with his frustrations," it is unclear precisely what frustrations or difficulties Kramer

faced. The opaque nature of these purported challenges makes it difficult to create a correlation between them and Kramer's misconduct.

This is not to suggest, however, that Kramer has not engaged in meaningful conduct for which he deserves credit. Kramer immediately orientated to his charges, engaged with the government in resolution discussions, and opted to enter a guilty plea. His quick resolution is important to his victims as it does not prolong their pain or require reliving their experiences through testimony. He also completed a fulsome psychosexual evaluation and appears genuinely motivated to better understand his offense conduct and what led him to offend. His written statement accepting responsibility appears genuine, but also somewhat misses the mark. It is clear Kramer regrets the familial and reputational harm that resulted from his actions. It is imperative that he eventually grapples with the broader harms caused by his actions and how his misconduct affected his victims.

   3. Need for Deterrence

Deterrence is an important aspect of criminal sentencing, especially in the context of crimes against children. A significant sentence of 97 months is warranted here to effectuate both specific and general deterrence. As discussed above, Kramer has ground to cover to fully understand the scope of own offense conduct. The government remains troubled by the disconnect between Kramer's actions and his total disavowal of any sexual interest in children. A longitudinal study of 341 offenders found that for individuals who viewed deviant pornography—as Kramer did—the odds of sexual recidivism increased by 233% when compared against those

who did not view such pornography. Kingston, et al., *Pornography Use and Sexual Aggression: The Impact of Frequency and Type of Pornography Use on Recidivism Among Sexual Offenders*, 34 Aggressive Behavior 341, 348 (2008). A significant sentence is imperative to mitigate these risks and to deter Kramer from reoffending. A similar calculus applies to the tenets of general deterrence. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) (explaining the importance of severe criminal sanctions in child exploitation matters in hopes of "dry[ing] up the market."). Finally, a 97-month sentence would not create any unwarranted disparities. *See, e.g.*, U.S. Sentencing Comm., *Federal Sentencing of Child Pornography: Non-Production Offenses* 21 (June 2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf at 27 (finding that a 103-month sentence represented the average for non-production defendants when combining distribution, receipt, and possession-based offenses).[2]

4. Restitution and Financial Assessments

Restitution in this matter is mandatory and the government has received one $10,000 restitution request from a known victim. PSR at ¶ 81. The government does not believe this request is contested. Consistent with the known victim's request, the government would request that any judgment or restitution order indicate that "Lily" is a known victim of Kramer's offense conduct.

---

[2] The government acknowledges that there are myriad statistics in this area, but it maintains that its requested sentence would not create any unwarranted disparities given Kramer's unique offense conduct.

8

Also, absent a finding of indigence, Kramer is subject to assessments that generally benefit victims of child pornography offenses. PSR ¶¶ 77-78. The government maintains that moderated assessments are appropriate in this matter. This is especially true given that Kramer has continued working during his presentence release and recently sold his home. *See, e.g.*, PSR ¶¶ 46, 68-63. The government respectfully requests that the Court order a $10,000 assessment pursuant to the AVAA and a $5,000 assessment to the JVTA. These assessments do not appear unduly burdensome when compared against Kramer's net worth. *See* PSR ¶ 64.

## Conclusion

For all these reasons, the government respectfully submits that a 97-month sentence, a 7-year term of supervised release, mandatory restitution of $10,000, and $15,000 in total assessments split between the AVAA and JVTA fully comports with the United States Sentencing Guidelines and the goals of Title 18, United States Code, Section 3553(a).

Dated: March 7, 2025           Respectfully Submitted,

LISA D. KIRKPATRICK
Acting United States Attorney

*/s/ Jordan L. Sing*

JORDAN L. SING
Assistant United States Attorney